[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of marriage wherein the parties (the defendant having filed a cross-complaint) seek a dissolution of marriage and related ancillary relief.
The parties intermarried on July 9, 1984 at Brattleboro, Vermont and have lived within the state of Connecticut for more than twelve months preceding the date of the complaint.
There are three minor children issue of the marriage, to wit: Daniel James Silvis born, May 25, 1987; Renee Marie Silvis, born June 21, 1989 and Lauren Marlene Silvis, born March 24, 1991. No state or municipal agency is contributing to the support of either party or said children. The jurisdictional requirements have been established.
The Court finds the marriage has broken down irretrievably and orders the marriage be dissolved on those grounds.
In determining the issues of support, alimony and the division of assets the Court is mindful of, and has considered the provisions of Connecticut General Statutes § 46b-81, 46b-82 and 46b-84.
The 45 year old plaintiff is a medical doctor employed by the State of Connecticut at a correctional facility in Enfield. His hours are from 7 a.m. to 2 p.m. Monday through Friday. He also maintains a private part-time practice in the town of Somers maintaining usual office hours from 2:30 p.m. to 6 p.m. Monday, Wednesday and Thursday and every other Friday. He makes his rounds of private patients at nursing homes and Johnson Memorial Hospital before 6:30 a.m. in order to get to his prison job at 7 a.m.
The defendant wife is a registered nurse and, until recently, has essentially been a homemaker and was not employed outside the home. The plaintiff was a physician in the Air Force when they married and they lived in California for approximately four years where the plaintiff achieved the rank of Major. In 1988, upon his completion of his military obligation, they moved to Connecticut where he began working part-time at the prison and established a part-time private practice, which evolved into the present arrangement.
The defendant is presently in a Bachelor of Arts program at the University of Hartford in the field of health sciences and has part-time work with a physician in Wethersfield, working two days a week at $16.00 CT Page 8089 per hour. Her gross earnings are $256 per week. She anticipates it will take three years for her to get her degree. Because of rheumatoid arthritis she would not be able to work regularly at a nurse's job, but with her degree anticipates working in the medical field, perhaps in a research facility.
The husband attributes the breakdown of the marriage to an affair the wife admittedly had in 1996 followed by the discovery in 1998 of a cache of amorous poetry from the wife's tennis instructor to her. She claims he was infatuated with her and while she found his attention flattering, they never did more than kiss and embrace.
The wife, on the other hand, attributes the breakdown to the plaintiffs abusive behavior, claiming he struck her with increasing frequency, would have tantrums where he threw things, that he shoved her around, slapped her, humiliated her with name calling, kicked her and posits that he also had an affair with his present office nurse during the marriage. (He denies any allegations of abuse and claims that there was no romantic relationship with his office nurse until after they had separated.)
Extra-marital affairs cannot be condoned or excused but neither can verbal or physical spousal abuse. It is also noteworthy that the plaintiff unilaterally set up custodial accounts for each of the three children which he funded by using money earned from his private practice, naming himself as the sole custodian. These accounts contain a total of approximately $57,000. He determined it was necessary to provide for their educations, which in itself is commendable, but the timing makes it obvious that he, in part at least, wanted to protect assets from his wife. Other facts or findings will be discussed which may be relevant to the orders to be entered, which are as follows:
1. Custody:
Custody shall be joint, primary residence with the defendant wife.
2. Parenting:
 A. The parties shall have alternating weekends from Friday to Sunday evening.
 B. The husband shall have visitation every Wednesday from after school to 8:00 p.m. Daniel to stay overnight with his father, if he chooses, on a night agreeable to both parties.
 C. In the event mother has to either attend school or work in the evenings, father shall be given the opportunity to have the children CT Page 8090 with him on those evenings, to be returned to mother at an agreed upon time.
 D. Additional visitation may be arranged at any time with the mutual consent of the parties.
 E. Each party shall be permitted to take the children on vacation during the year upon advance notice to the other of not less than 45 days, however, the vacation time shall not exceed 3 weeks in any one year period commencing with the date of judgment.
 F. The parties shall share holidays. (It appears they have been able to agree to holiday visitation so far).
 G. Neither party shall leave the girls unattended for longer than one hour.
 H. Lauren shall be permitted to return to her mother if she so requests during any visitation with her father.
 I. Renee shall be permitted to attend Montessori school the coming school year, then decide, with input from both parents and her therapist, where she should attend school thereafter.
3. Child Sunport:
The parties submitted support guideline worksheets with disparate conclusions, although both use the same gross income to begin with. The Court finds the plaintiffs to be more accurate. For example, the defendant uses a federal tax deduction of approximately 32% of her gross weekly income of $256, which is not accepted as reliable.
The plaintiff shall pay child support in the amount of $534 weekly which the Court finds to be in substantial compliance with support guidelines. He shall provide medical insurance coverage for the minor children through his present medical insurance policy or its equivalent. He shall also be responsible for 63% of any and all reasonable unreimbursed medical, orthodontic, optical, psychiatric or psychological counseling, prescription and dental expenses for the minor children, and 63% of reasonable necessary day care expenses.
The defendant shall be responsible for the remaining 37% of said expenses. The parties shall consult each other prior to incurring extraordinary medical or dental expenses except in the event of emergency. CT Page 8091
4. Alimony:
The plaintiff shall pay alimony in the amount of $625 per week for nine years modifiable as to the amount, but non-modifiable as to duration, except that alimony shall sooner terminate upon the first of the following events to occur:
A. The death of either party.
 B. The wife's remarriage or cohabitation according to statute. The parties are to exchange income tax returns annually and the defendant shall have the right to have the plaintiffs medical practice audited at her expense.
(The Court does not fully accept the plaintiffs evidence that the business expenses associated with his private practices are reasonable, specifically in early 1999 he had a net weekly income of $950 from his practice, which is now down to $369, primarily due to the salary of his office nurse, with whom he has a personal relationship, moving from a part-time to a full-time position. Also, as noted previously, he was able to draw cash from his office accounts for his children's custodial funds.)
5. Wife's Medical Insurance:
The plaintiff shall provide medical insurance coverage for the defendant pursuant to his medical insurance policy through COBRA provisions. The defendant shall be responsible for any premium attributable to her coverage.
6. Life Insurance:
The plaintiff shall maintain his current $250,000 life insurance policy with the defendant as beneficiary to cover support and alimony obligations, until he no longer has any responsibility for either alimony or support. He shall provide the defendant with proof of such coverage annually.
7. Real Estate:
The plaintiff shall quitclaim his interest in the marital home known as 72 Florida Road, Somers, Connecticut to the defendant. The defendant shall hold the plaintiff harmless from all liability in connection with said property, including the remaining mortgage, taxes and insurance.
8. Aetna 401K Plan:
CT Page 8092
The plaintiff shall transfer fifty percent interest in this asset to the defendant.
9. Automobiles:
The plaintiff shall have the 1993 Pontiac Bonneville and the 1968 Ford Mustang. The defendant shall the 1995 Ford Windstar. The parties shall hold each other harmless from the costs associated with their own vehicles.
10. State of Connecticut Retirement:
The plaintiff shall assign one half of the present value of his retirement policy to the defendant through a Qualified Domestic Relations Order.
11. Tax Exemptions:
The plaintiff shall claim Daniel as an exemption on his federal tax returns and the defendant shall claim Renee and Lauren as tax exemptions. In the event, however, the dependency exemption is of no financial value to the defendant, the plaintiff shall be entitled to the exemption. The defendant shall notify the plaintiff on before March 1St of any year in which she does not intend to utilize the exemption for the preceding year.
12. Tax Refund:
The defendant shall receive one half of the plaintiffs 1999 income tax refunds.
13. Private Medical Practice:
The Court finds the plaintiffs private medical practice has a reasonable value of $15,000. The plaintiff shall have ownership of this asset.
14. Bank Accounts:
Each party shall retain any funds in their respective savings or checking accounts.
15. Stocks and Mutual Funds:
The parties shall retain their interest as shown on their financial CT Page 8093 affidavits in these assets, which include Quick and Riley accounts, and Accutrade.
16. Personal Property:
The parties shall keep the personal property presently in their possession except the plaintiff shall be given possession of the china, crystal and silverware from the dining room in the marital home.
17. Children's Auto Insurance:
The parties shall share equally the cost of providing automobile liability insurance for the children until they reach their eighteenth birthday.
18. Lump Sum Alimony:
The plaintiff shall pay the defendant the additional sum of $12,500 as lump sum alimony within thirty days.
19. Attorneys' fees:
The plaintiff shall contribute $2, 500 toward the defendant's attorney's fee within thirty days.
Klaczak, J.